UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------ x

| | |
|---|---|
| GENEA CARTER, ANTHONY PAIGE, LORRAINE HARDEN, DONTAY STEVENSON,<br><br>                              Plaintiffs,<br><br>-against-<br><br>CITY OF NEW YORK, SERGEANT ERIC P. SAMUELS, SHIELD NO. 01464, DETECTIVE WILLIAM SCHMIDT, SHIELD NO. 3322, DETECTIVE MICHAEL PEREZ, SHIELD NO. 2470, DETECTIVE ERIC MEZA, SHIELD NO. 5666,<br><br>                              Defendants. | FIRST AMENDED COMPLAINT AND JURY DEMAND<br><br>Docket No.<br>11CV6352(RRM)(VVP)<br><br>ECF CASE |

------------------------------------------------------------------ x

Plaintiffs GENEA CARTER, ANTHONY PAIGE, LORRAINE HARDEN, DONTAY STEVENSON by their attorneys, Stoll, Glickman & Bellina, LLP, for their complaint allege as follows:

PRELIMINARY STATEMENT

1.   This is a civil rights action in which plaintiffs seek relief through 42 U.S.C. §1983 for the violation of their Fourth and Fourteenth Amendment rights in addition to violations of the laws and Constitution of the State of New York.

2.   On January 11, 2011 plaintiffs were inside Genea Carter's residence when defendants started banging on her door. When Ms. Harden, Ms. Carter's mother, opened the door, defendants barged into plaintiff's apartment, looking for Ms. Carter's uncle. Defendants claimed to have a search warrant for the apartment, but refused to show it to plaintiff. When plaintiff informed defendants that she was a NYPD School Safety Agent and that she knew they needed a search warrant to go through her apartment, they started to laugh at her, threaten to write her up at work, took plaintiffs' identifications and

1

remained in the apartment for more than 40 minutes, searching inside drawers, kitchen cabinets, and inside bedrooms. Six months later, Sergeant Samuels filed a command discipline against Ms.Carter, accusing her of "Failing to comply with a lawful order" during the execution of a warrant for her uncle. Plaintiff was found guilty and was punished by forfeiting 2 vacation days. Plaintiff has requested a statutory hearing disputing the guilty finding and recommended disciplinary punishment.

3. Plaintiffs seek monetary damages (special, compensatory, and punitive) against defendants, as well as an award of costs and attorneys' fees, and such other and further relief as the Court deems just and proper.

## JURISDICTION

4. This action arises under the Fourth and Fourteenth Amendments to the United States Constitution and under 42 U.S.C. §1983 and §1988 and the laws and Constitution of the State of New York.

5. The jurisdiction of this court is predicated upon 28 U.S.C. §§ 1331, 1343(a)(3) and (4), 1367(a) and the doctrine of pendent jurisdiction.

## VENUE

6. Venue is laid within the Eastern District of New York in that Defendant City of New York is located within and a substantial part of the events giving rise to the claim occurred within the boundaries of the Eastern District.

## PARTIES

7. Plaintiffs resided at all times here relevant in Kings County, City and State of New York.

8. The City of New York (or "the City") is a municipal corporation organized

under the laws of the State of New York. At all times relevant hereto, Defendant City, acting through the New York Police Department (or "NYPD"), was responsible for the policy, practice, supervision, implementation, and conduct of all NYPD matters and was responsible for the appointment, training, supervision, discipline and retention and conduct of all NYPD personnel. In addition, at all times here relevant, Defendant City was responsible for enforcing the rules of the NYPD, and for ensuring that the NYPD personnel obey the laws of the United States and the State of New York.

9. Sergeant Eric P. Samuels was, at all times here relevant, a police officer of the NYPD, and as such was acting in the capacity of an agent, servant and employee of the City of New York. On information and belief, at all times relevant hereto, Defendant Sergeant Eric P. Samuels was involved in the decision to arrest plaintiff without probable cause or failed to intervene in the actions of his fellow officers when he observed them arresting plaintiff without probable cause. Upon information and belief, defendant Sergeant Eric P. Samuels was under the command of the Brooklyn North Warrant Squad on the date of the incident. On information and belief, at all times relevant hereto, Defendant Sergeant Eric P. Samuels was under the command of the Brooklyn North Warrant Squad and is sued in his individual capacity.

10. Defendant Detective William Schmidt, Shield No. 3322, was, at all times here relevant, a police officer of the NYPD, and as such was acting in the capacity of an agent, servant and employee of the City of New York. On information and belief, at all times relevant hereto, Defendant Schmidt was involved in the decision to arrest plaintiff without probable cause or failed to intervene in the actions of his fellow officers when he observed them arresting plaintiff without probable cause. Upon information and belief,

defendant Sergeant Schmidt was under the command of the Brooklyn North Warrant Squad on the date of the incident. On information and belief, at all times relevant hereto, Defendant Schmidt was under the command of the Brooklyn North Warrant Squad and is sued in his individual capacity.

11. Defendant Detective Michael Perez, Shield No. 2470, was, at all times here relevant, a police officer of the NYPD, and as such was acting in the capacity of an agent, servant and employee of the City of New York. On information and belief, at all times relevant hereto, Defendant Perez was involved in the decision to arrest plaintiff without probable cause or failed to intervene in the actions of his fellow officers when he observed them arresting plaintiff without probable cause. Upon information and belief, defendant Perez was under the command of the Brooklyn North Warrant Squad on the date of the incident. On information and belief, at all times relevant hereto, Defendant Perez was under the command of the Brooklyn North Warrant Squad and is sued in his individual capacity.

12. Defendant Detective Eric Meza, Shield No. 5666, was, at all times here relevant, a police officer of the NYPD, and as such was acting in the capacity of an agent, servant and employee of the City of New York. On information and belief, at all times relevant hereto, Defendant Meza was involved in the decision to arrest plaintiff without probable cause or failed to intervene in the actions of his fellow officers when he observed them arresting plaintiff without probable cause. Upon information and belief, defendant Meza was under the command of the Brooklyn North Warrant Squad on the date of the incident. On information and belief, at all times relevant hereto, Defendant Meza was under the command of the Brooklyn North Warrant Squad and is sued in his

individual capacity.

13. At all times here mentioned defendants were acting under color of state law, to wit, under color of the statutes, ordinances, regulations, policies, customs and usages of the City and State of New York.

## NOTICE OF CLAIM

14. Within 90 days of the events giving rise to these claims, plaintiffs filed written notices of claim with the New York City Office of the Comptroller. Over 30 days have elapsed since the filing of those notices, and this matter has not been settled or otherwise disposed of.

## FACTUAL ALLEGATIONS

15. On January 11, 2011 plaintiffs were inside Genea Carter's residence getting ready to watch a television show together. Plaintiff Genea Carter is the leaseholder of the apartment. Lorraine Harden is her mother. Her brother is Anthony Paige and Dontay Stevenson is a friend of the family.

16. At about 9:00 p.m., plaintiffs heard a banging on the door. Plaintiff Anthony Paige went to the door and asked who was at the door. Plaintiffs heard defendants say, "Open the door!". Paige asked several more times who was at the door. When the defendants finally answered "police" plaintiff asked them how he could help them and they only responded "Open the door".

17. Lorraine Harden opened the door.

18. Defendants, three detectives with the NYPD in plainclothes, walked in without asking for permission and without plaintiffs' consent. Immediately they asked plaintiff Lorraine Harden for her name. She responded with her name and the officers asked again

5

"Harden?"

19. Plaintiff Genea Carter asked the officers if they were looking for her uncle and they responded yes.

20. Plaintiff Genea Carter told the officers that her uncle didn't live at her apartment and she asked for a warrant. Defendants showed her a piece of paper with a photograph and an address on it, but it was not plaintiff's address. When she told the defendants that it was not her address, they said that it didn't matter and pushed past Genea Carter.

21. Defendants took plaintiffs' identifications.

22. The officers remained in the apartment about 45 minutes, searching inside drawers, kitchen cabinets, and inside bedrooms. Defendants were verbally abusive and threatened to retaliate against Genea Carter.

23. At least one officer remained near the apartment door during the duration of the officers' unlawful entry and search of the apartment.

24. Plaintiff Dontay Stevenson, who was visiting, wanted to leave the apartment and could not because the officers were holding his identification and standing in front of the door.

25. When plaintiff Genea Carter, who works as a School Safety Agent for the New York Police Department, asked for a search warrant and the officers' identification, the officers became irate and threatened to report her to her sergeant.

26. Defendants did not find anything illegal inside the apartment, did not find plaintiff's uncle, and did not arrest or give anyone inside the apartment summonses.

27. During the time the defendants were inside the apartment, plaintiffs did not feel free to leave.

28. Plaintiff Genea Carter called Internal Affairs while they were inside her apartment.

29. Months after the incident, plaintiff was interviewed by Internal Affairs regarding her relationship to her uncle.

30. Six months later, Sergeant Samuels filed a command discipline against plaintiff Carter, accusing her of "Failing to comply with a lawful order" during the execution of a warrant for her uncle. Plaintiff was found guilty and lost 2 vacation days. Plaintiff has requested a statutory hearing to dispute the guilty finding and penalty. While she lost the vacation days, the command discipline is still in her file as pending.

31. At all times during the events described above, the defendant police officers were engaged in a joint venture and formed an agreement to violate plaintiffs' rights. The individual officers assisted each other in performing the various actions described and lent their physical presence and support and the authority of their office to each other during said events. They failed to intervene in the obviously illegal actions of their fellow officers against plaintiffs.

32. During all of the events above described, defendants acted maliciously and with intent to injure plaintiffs.

## DAMAGES

33. As a direct and proximate result of the acts of defendants, plaintiffs suffered the following injuries and damages:

    a. Violation of their rights pursuant to the Fourth Amendment of the United States Constitution to be free from an unreasonable search and seizure of their persons;

7

b. Violation of their rights pursuant to the Fourteenth Amendment of the United States Constitution to due process;

c. Violation of their New York State Constitutional rights under Article 1, Section 12 to be free from an unreasonable search and seizure;

d. Violation of their New York State Constitutional rights under Article 1, Section 6 to due process;

e. Emotional trauma and suffering, including fear, embarrassment, humiliation, harassment, emotional distress, frustration, extreme inconvenience, anxiety;

f. Loss of liberty;

g. Economic loss, plaintiff Genea Carter's potential loss of 2 vacation days (pending the final outcome of plaintiff's statutory hearing), and slander to her supervisor at the School Safety Agency of the NYPD.

FIRST CAUSE OF ACTION
42 U.S.C. § 1983
False Arrest and False Imprisonment
(Against Officer Defendants)

34. The above paragraphs are here incorporated by reference.

35. The officer defendants wrongfully and illegally detained plaintiffs inside Genea Carter's apartment by holding their identifications and standing in front of the door.

36. Plaintiffs were not free to leave the apartment for approximately 45 minutes.

37. The wrongful, unjustifiable, and unlawful detentions of plaintiffs were carried out without a valid warrant, without plaintiffs' consent, and without probable cause or reasonable suspicion.

38. Throughout this period, plaintiffs were unlawfully, wrongfully, and

unjustifiably deprived of their liberty.

39. At all times, the unlawful, wrongful, and false imprisonment of plaintiffs were without basis and without probable cause or reasonable suspicion.

40. All of this occurred without any illegal conduct by plaintiffs.

41. The officer defendants acted under pretense and color of state law and in their individual and official capacities and within the scope of their respective employment as NYPD officers. Said acts by officer defendants were beyond the scope of their jurisdiction, without authority of law, and in abuse of their powers, and said defendants acted willfully, knowingly and with the specific intent to deprive plaintiffs of their constitutional rights secured by the United States Constitution.

42. As a direct and proximate result of the misconduct and the abuse of authority detailed above, plaintiffs sustained the damages described above.

SECOND CAUSE OF ACTION
New York State Constitution Article I §12
False Arrest and False Imprisonment
(Against All Defendants)

43. The above paragraphs are here incorporated by reference.

44. The officer defendants wrongfully and illegally detained and imprisoned plaintiffs.

45. The wrongful, unjustifiable, and unlawful apprehensions, detentions and imprisonment of plaintiffs were carried out without a valid warrant, without plaintiffs' consent, and without probable cause or reasonable suspicion.

46. Throughout this period, plaintiffs were unlawfully, wrongfully, and unjustifiably deprived of their liberty.

47. At all times, the unlawful, wrongful, and false imprisonment of plaintiffs were

without basis and without probable cause or reasonable suspicion.

48. All of this occurred without any illegal conduct by plaintiffs.

49. Defendants, their officers, agents, servants and employees, were responsible for plaintiffs' imprisonments during this period of time. Defendant City, as employer of Officer Defendants, is responsible for their wrongdoing under the doctrine of *respondeat superior*.

50. Defendants acted with a knowing, willful, wanton, grossly reckless, unlawful, unreasonable, unconscionable, and flagrant disregard of plaintiffs' rights, privileges, welfare, and well-being and are guilty of egregious and gross misconduct towards plaintiffs.

51. The officer defendants acted under pretense and color of state law and in their individual and official capacities and within the scope of their respective employment as NYPD officers. Said acts by officer defendants were beyond the scope of their jurisdiction, without authority of law, and in abuse of their powers, and said defendants acted willfully, knowingly and with the specific intent to deprive plaintiffs of their constitutional rights secured by the Constitution of the State of New York.

52. As a direct and proximate result of the misconduct and the abuse of authority detailed above, plaintiffs sustained the damages described above.

THIRD CAUSE OF ACTION
False Arrest and False Imprisonment
(Against All Defendants)

53. The above paragraphs are here incorporated by reference.

54. Defendants subjected plaintiffs to false imprisonment and deprivation of liberty without probable cause.

55. Defendants intended to confine plaintiffs, plaintiffs were conscious of their confinement and did not consent to their confinement.

56. Defendants, their officers, agents, servants and employees, were responsible for plaintiffs' detentions and imprisonments during this period of time. Defendant City, as employer of Officer Defendants, is responsible for their wrongdoing under the doctrine of *respondeat superior*.

57. As a direct and proximate result of the misconduct and the abuse of authority detailed above, plaintiffs sustained the damages described above.

FOURTH CAUSE OF ACTION
Negligent Hiring & Retention
(Against City Defendant)

58. The above paragraphs are here incorporated by reference.

59. Upon information and belief, defendant City, through the NYPD, owed a duty of care to plaintiffs to prevent the physical and mental abuse sustained by plaintiffs.

60. Upon information and belief, defendant City, through the NYPD, owed a duty of care to plaintiffs because under the same or similar circumstances a reasonable, prudent and careful person should have anticipated an injury to plaintiff or those in a position similar to plaintiffs' as a result of this conduct.

61. Upon information and belief, defendant officers were incompetent and unfit for their positions.

62. Upon information and belief, defendant City knew or should have known through exercise of reasonable diligence that the officer defendants were potentially dangerous.

63. Upon information and belief, Defendant City's negligence in hiring and

retaining the officer defendants proximately caused plaintiffs' injuries.

64. Upon information and belief, because of the defendant City's negligent hiring and retention of defendant officers, plaintiffs incurred damages described above.

### FIFTH CAUSE OF ACTION
### Intentional Infliction of Emotional Distress
### (Against Defendant Samuels as to Plaintiff Carter)

65. The above paragraphs are here incorporated by reference.

66. Defendant Samuels' conduct of intruding in plaintiffs' home without permission, unlawfully searching through plaintiffs' home, threatening to write her up for objecting to defendants' unlawful trespass and search, and eventually writing her up for a command discipline for objecting to defendants' unlawful trespass and search, was extreme and outrageous conduct.

67. Defendant Samuels intended to cause, or disregarded the substantial probability of causing plaintiff Genea Carter severe emotional distress.

68. Defendant Samuels caused plaintiff Genea Carter substantial emotional distress as a result of his threats to write her up for a command discipline and his actual writing of the command discipline.

69. Plaintiff Genea Carter has suffered extreme emotional distress as a result of Samuels' conduct.

### SIXTH CAUSE OF ACTION
### (Trespass)
### (Against All Defendants)

70. The above paragraphs are here incorporated by reference.

71. Plaintiff Genea Carter resided in the apartment on January 9, 2011.

72. Defendants voluntarily and intentionally entered upon plaintiffs' real property

without consent by walking through the door without consent and without asking permission.

73. Defendants did not have a warrant to enter or search plaintiff's apartment.

74. Defendants, their officers, agents, servants and employees, were responsible for their trespass during this period of time. Defendants conducted an unlawful search without a search warrant for plaintiff's apartment. Defendant City, as employer of Officer Defendants, is responsible for their wrongdoing under the doctrine of *respondeat superior*.

75. As a direct and proximate result of the misconduct and the abuse of authority detailed above, plaintiff sustained the damages described above.

SEVENTH CAUSE OF ACTION
(Slander)
(Against Sergeant Samuels as to Plaintiff Carter)

76. The above paragraphs are here incorporated by reference.

77. On January 14, 2011, defendant Samuels filled out a command discipline against plaintiff alleging that plaintiff Carter was "uncooperative, belligerent and did not comply with the orders given to her by a NYPD Supervisor. Conduct prejudicial to good order of the Department. Failure to comply with lawful order."

78. Plaintiff was asked to come into Internal Affairs to answer questions about her relationship with her uncle.

79. Defendant Samuels' Command Discipline injured plaintiff regarding her professional as a member of service with the New York Police Department School Safety Division.

80. She was found "guilty" by ASSS Williams of the School Safety Division, who

recommended "forfeit 2 days vacation" as disciplinary action on June 21, 2011.

81. Plaintiff has requested a statutory hearing to dispute the finding and disciplinary action recommended by her supervisor based on the Sergeant's Command Discipline.

82. The statutory hearing is still pending. The 2 days have been taken from plaintiff, however, the Command Discipline is still pending in her file.

WHEREFORE, plaintiffs demand judgment against the defendants, jointly and severally, as follows:

A. In favor of plaintiffs in an amount to be determined by a jury for each of plaintiffs' causes of action;

B. Awarding plaintiffs punitive damages in an amount to be determined by a jury;

C. Awarding plaintiffs reasonable attorneys' fees, costs and disbursements of this action; and

D. Granting such other and further relief as this Court deems just and proper.

## JURY DEMAND

Plaintiffs demand a trial by jury.

DATED:   April 18, 2012
         Brooklyn, New York

TO:

City of New York
100 Church Street
New York, NY 10007

Sergeant Eric P. Samuels
Shield No. 01464
Kings County North Warrant Squad
245 Glenmore Avenue
Brooklyn NY 11207

Detective William Schmidt
Shield No. 3322
Kings County North Warrant Squad
245 Glenmore Avenue
Brooklyn NY 11207

Detective Michael Perez
Shield No. 2470
Kings County North Warrant Squad
245 Glenmore Avenue
Brooklyn NY 11207

Detective Eric Meza
Shield No. 5666
Kings County North Warrant Squad
245 Glenmore Avenue
Brooklyn NY 11207

Respectfully yours,

*[signature]*

By: Cynthia Conti-Cook
Bar# CC0778
Stoll, Glickman & Bellina, LLP
Attorneys for Plaintiff
475 Atlantic Avenue 3rd Floor
Brooklyn, NY 11217
(718) 852-3710
(718) 852-3586
cconti-cook@stollglickman.com